UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | |
|---|---|
| RESA K. L.,<br><br>    Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security,<br><br>    Defendant. | No. 6:20-CV-069-H-BU |

**ORDER ACCEPTING THE FINDINGS, CONCLUSIONS, AND
RECOMMENDATION OF THE MAGISTRATE JUDGE**

    United States Magistrate Judge John R. Parker made Findings, Conclusions, and a Recommendation (FCR) in this case on December 3, 2021. *See* Dkt. No. 22. Judge Parker recommended that the Court affirm the Commissioner of Social Security's decision to deny the plaintiff's application for supplemental security income. *Id.* at 1. The plaintiff filed three objections to that recommendation. Dkt. No. 23. The Commissioner responded. Dkt. No. 24. Having reviewed the objected-to parts of Judge Parker's work de novo, the Court concludes that the objections are meritless, so they are overruled. The FCR is adopted in full, and the ALJ's hearing decision is affirmed.

**1.    Procedural History**

    The plaintiff filed an application for supplemental security income with the Social Security Administration in November 2017. Dkt. No. 17-1 at 21. Her disabilities seem to stem from a bike accident two years prior. *Id.* at 42, 51. The Administration denied her claim in July 2018 and again in October 2018. *Id.* at 21. She timely requested a hearing before an Administrative Law Judge—that hearing was held in July 2019. *Id.* At the hearing, the plaintiff and a vocational expert (VE) testified. *Id.*; *see id.* at 38–63 (hearing

transcript). The ALJ considered the evidence before him and, in late August 2019, the ALJ issued his decision (*id.* at 21–31), concluding that the plaintiff was capable of transitioning to other work that exists in significant numbers in the national economy and was therefore not disabled within the Act's definitions. *Id.* at 30–31. After the ALJ issued his decision, the plaintiff requested review from the Social Security Appeals Council, *id.* at 2, 15–17, which denied her request in June 2020, *id.* at 5–7.

Invoking 42 U.S.C. § 405(g), the plaintiff timely appealed to this Court for review of the Commissioner's decision to deny her application for supplemental-security-income benefits. Dkt. No. 1. The matter was automatically referred to the Honorable Magistrate Judge John Parker pursuant to Special Order 3. Dkt. No. 5. After the Commissioner filed an answer, Dkt. No. 15, and the administrative record was filed, Dkt. No. 17, the plaintiff filed her brief seeking either an outright reversal or vacatur and remand. Dkt. No. 19 at 13. The Commissioner responded in defense of the ALJ's decision to deny the plaintiff SSI benefits. Dkt. No. 20. And the plaintiff replied. Dkt. No. 21.

Judge Parker then issued findings, conclusions, and a recommendation that the ALJ's decision be affirmed. Dkt. No. 22. "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations[]" of a magistrate judge. Fed. R. Civ. P. 72(b)(2); *see* 28 U.S.C. § 636(b)(1). The plaintiff filed timely objections (Dkt. No. 23) to which the Commissioner has responded (Dkt. No. 24), so the FCR is ripe for the Court's review.

**2.    Standard of Review**

"The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see* 28 U.S.C.

§ 636(b)(1). By contrast, the district judge reviews any unobjected-to proposed findings, conclusions, and recommendations only for plain error. *Portwood v. Schneider & McKinney P.C.*, No. 3:20-CV-03344-X, 2020 WL 7056302, at *1 (N.D. Tex. Dec. 2, 2020) (Starr, J.). The Court need not review an FCR de novo if a party's objections are merely recitations of arguments already made to and rejected by the magistrate judge. *See Nolen-Davidson v. Comm'r, Soc. Sec. Admin.*, No. 4:20-CV-1085-P, 2021 WL 4476763, at *1 (N.D. Tex. Sept. 30, 2021) (Pittman, J.) (explaining that conducting de novo review of previously rejected arguments undermines the efficiency gains that were the goal of the Federal Magistrate's Act); *see Thomas v. Arn*, 474 U.S. 140, 153 (1985) ("It seems clear that Congress would not have wanted district judges to devote time to reviewing magistrate's reports except to the extent that such review is requested by the parties or otherwise necessitated by Article III of the Constitution.").

Just because the Court's review of the Magistrate Judge's FCR is de novo does not mean its review of the Administrative Law Judge's decision is, too. "Substantial evidence" is the name of the game when reviewing an ALJ's determination. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019). Indeed, the Court's "review of Social Security disability cases is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the [ALJ] applied the proper legal standard." *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citation and internal quotations omitted). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see Copeland*, 771 F.3d at 923 ("Substantial evidence is more than a mere scintilla and less than a preponderance." (internal quotation

marks omitted)). The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995).

When reviewing an eligibility determination, "[a] court will reverse the ALJ's decision as not supported by substantial evidence if the claimant shows that [] the ALJ failed to fulfill his duty to develop the record adequately." *Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) (citing *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996)). But the Court does not hold the ALJ to procedural perfection, and the Court will reverse the ALJ's decision for failure to adequately develop the record only if that failure prejudiced the plaintiff. *See Jones*, 691 F.3d at 733. "To establish prejudice, a claimant must show that he 'could and would have adduced evidence that might have altered the result.'" *Brock*, 84 F.3d at 728 (quoting *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984)).

In short, a court's review of an ALJ's decision to approve or deny benefits is deferential. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). The Court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [its] judgment for that of the [ALJ], even if the evidence preponderates against the [ALJ's] decision." *Id.* (quoting *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988)). "Conflicts in the evidence are for the [ALJ] and not the courts to resolve." *Id.* (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

3. Analysis

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability." *Copeland*, 771 F.3d at 923 (citing 42

U.S.C. § 423(d)(1)(A)).  The Social Security Act defines "disability" as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment" that can be expected to result in death or last for a continued period of 12 months.  *See id*. § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).  A disabled worker is entitled to monthly social security benefits if certain conditions are met.  *See* 42 U.S.C. § 423(a).

Determining eligibility is a five-step process, but a finding that the claimant is disabled or not disabled at any point along the way is dispositive.  *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).  Step 1 asks whether the claimant is engaging in substantial gainful activity.  20 C.F.R. § 404.1520(b).  If not, Step 2 asks whether the claimant has a medically determinable impairment, or a series of impairments, that are severe.  *Id.* § 404.1520(c).  If so, the question at Step 3 is whether that impairment appears on a list that the agency keeps, pursuant to 20 C.F.R. Part 404, Subpart P, Appendix 1.  If it does, then benefits are due; if it does not, then the ALJ pauses to determine the claimant's residual functional capacity (RFC), defined as the most physical and mental work the claimant can do on a sustained basis despite her limitations.  20 C.F.R. § 404.1545(a).  The RFC is vital to Steps 4 and 5.  At Step 4, the ALJ must evaluate whether the claimant can still—given her RFC—succeed in her past relevant work.  If she can, then benefits must be denied.  *Id.* § 404.1520(f).  If she cannot, the ALJ proceeds to the final step and determines, usually with the help of a vocational expert (VE), whether there are significant opportunities in the national economy that the claimant can perform given her RFC.  *Id.* § 404.1520(g)(1).  Again, if there are, the ALJ will deny the application; if there aren't, the claimant prevails.  *Id*.  Only at Step 5 does the Administration bear the burden of

proof; until then, it rests with the claimant. *See Copeland*, 771 F.3d at 923; *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007). "The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).

Here, the ALJ concluded at Step 2 that the plaintiff did suffer impairments. Dkt. No. 17-1 at 22. At Step 3, however, he concluded that those impairments—either singularly or taken together—failed to satisfy the criteria set forth in Appendix 1 of the governing regulations to establish that she was disabled. *Id*. at 23–26. So he moved on to the next step—determining the plaintiff's RFC. *Id.* at 26–30. Importantly, although the plaintiff's history of seizures and headaches did not rise to the level of an "impairment" under paragraph B at Step 3, the ALJ did consider and incorporate them when determining the plaintiff's residual functional capacity. *Id.* at 26–27. Given that the plaintiff had no work history, there was no past-work analysis to be performed at Step 4. *Id*. at 29.

The ALJ moved to the final step: evaluating whether there are sufficient job opportunities for the plaintiff given her RFC. At this point, the ALJ enlisted the help of a vocational examiner, to whom he posed the following hypothetical based on his RFC determination:

> Let's look at an individual who, under the Social Security Administration's terminology is closely approaching advanced age. The individual has a GED and the same work history as [plaintiff], along with this capacity to work.
> The individual can lift, carry, push or pull only 20 pounds occasionally and 10 pounds frequently. The individual can sit, stand or walk, individually or in combination throughout an eight-hour workday, and otherwise perform the full range of light work but with these additional limitations. The individual must follow seizure precautions including, one, no exposure to hazards such as unprotected dangerous machinery, two, no working at unprotected heights, including no climbing ladders, scaffolds or ropes, and three, no driving.

> The individual is limited to simple work, specifically the occupations with a reasoning development level of 1 or 2 as defined in the Dictionary of Occupational Titles, and the individual can have no more than superficial interaction with the public or supervisors.
> Assume the individual cannot perform any of the claimant's past work. In your opinion, are there jobs in the national economy at the light level that such a person could perform?

*Id.* at 59–60.

The VE responded, "Yes, Judge, there would be work that would fit your hypothetical," and then proceeded to list three positions that the plaintiff could perform based on the hypothetical's limitations—hand packager, cleaner, and garment sorter. *Id.* at 60. The plaintiff's advocate then asked follow-up questions, including one relevant for the Court's purposes: "And if a person is unable to maintain concentration for an extended period, let's say of two hours, would that person be able to do any of the unskilled jobs mentioned?" *Id.* at 62. The VE responded: "For two hours? No." *Id.* The ALJ issued his denial decision a few weeks later, concluding that she could transition to one of the three roles identified by the VE, and therefore was not eligible for SSI benefits under the Act. *Id.* at 30–31.

According to the plaintiff, three errors infect that conclusion and require reversal. Since her objections assail the work of the ALJ, rather than the magistrate judge, the Court would be well within its rights to decline to consider the objections. *Nettles v. Wainwright*, 677 F.2d 404, 410 & n.8 (5th Cir. 1982), *overruled on other grounds by Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996); *see Camardo v. Gen. Motors Hourly-Rate Emps. Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992) (recitations of arguments nearly identical to those made to the magistrate are insufficient as objections and constitute an

improper "second bite at the apple"). Nevertheless, the Court addresses—and overrules—each objection in turn.

First, she argues that the ALJ failed to incorporate certain functional limitations linked to her mental impairments into his RFC determination. Dkt. No. 23 at 2. Her moderate impairment in adapting and managing herself was excluded from the RFC, she argues, because the ALJ made observations based on her ability to function in her daily life outside of a work environment. Dkt. No. 23 at 3–4. According to the plaintiff, that failure means that the ALJ's determination was not supported by substantial evidence. Dkt. No. 23 at 5.

The Court disagrees. As the Commissioner explained, the ALJ's questions and RFC determination limited the plaintiff to simple work at a reasoning-development level of 1 or 2. Dkt. No. 20 at 3–5. There is no statutory or regulatory requirement that the ALJ incorporate moderate limitations word-for-word in his RFC or his hypotheticals. *See Bordelon v. Astrue*, 281 F. App'x 418, 423 (5th Cir. 2008) (affirming ALJ who faithfully incorporated the substance of moderate-impairment paragraph B findings into his hypothetical to the VE). The plaintiff's focuses on the ALJ's statement that she can care for herself and her dog at home. Dkt. No. 23 at 3. To the plaintiff, acknowledging her own evidence that she can function in daily life is somehow a reason to fault the ALJ. *Id*. at 3–4. The Court, like Judge Parker before it, sees things differently. The ALJ's restriction of his RFC to reasoning-development levels 1 and 2 reasonably accounted for and reflected the plaintiff's workplace limitations based on the totality of the evidence before him. Moreover, given that the claimant had no work history, it is unclear what evidence the ALJ should have relied upon to gauge the severity of her mental limitations. The plaintiff cannot

seriously contend that her lack of work history renders her ability to function at home irrelevant. If the shoe were on the other foot—if the claimant could not function in her home life—the ALJ would properly consider that evidence in formulating his RFC. The RFC reasonably captured the plaintiff's limitations and was supported by substantial evidence, so this objection is overruled.

Second, the plaintiff argues that her severe headaches were unaccounted for by the RFC and resulting hypotheticals to the VE, similarly dooming the ALJ's determination. Dkt. No. 23 at 5–6. Again, the Court disagrees. The plaintiff writes: "The Magistrate Judge has not pointed to any limitations in the ALJ's RFC determination which would account for the impairment of headaches, which the ALJ deemed to be severe." Dkt. No. 23 at 5. The use of "severe" here, although technically correct, is a term of art. The ALJ concluded that her headaches were "severe" under the *de minimis* standard that governs at Step 2. *See Stone v. Heckler*, 752 F.2d 1099, 1100–01 (5th Cir. 1985); Dkt. No. 17-1 at 22. The ALJ did not, however, conclude that those headaches were "severe" in the usual sense of the word. That conclusion is amply supported by the mixed evidence before him as to the plaintiff's neurological condition. *See* Dkt. No. 17-1 at 25 ("The evidence also documented her memory, attention, and concentration were intact."); *id.* at 26 ("[W]henever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, I must consider the other evidence to determine if the claimant's symptoms limit the claimant's ability to perform work-related activities."); *id.* at 27 ("The claimant alleged headaches, but her treatment notes repeatedly noted the claimant denied frequent headaches."). Nevertheless, "the mental limitations further accounted for when the claimant has headaches or a seizure and might have

difficulty concentrating." *Id.* The law does not require that the magistrate judge state the obvious, so the failure to do so is not error. Even were the failure to point out specific language in the RFC that accounts for the plaintiff's uncorroborated and sometimes-contradictory history of headaches, the RFC, on its face, accounts for any mental limitations placed on the plaintiff by her headaches. *Id.* at 26–29. Once again, the ALJ's determination is supported by substantial evidence.

Third, the plaintiff argues that the ALJ's RFC determination and questions to the VE failed to account for the effect of the plaintiff's seizures on her ability to work. Dkt. No. 23 at 5. Here, too, the Court disagrees. The ALJ's RFC and hypotheticals were based on the plaintiff's corroborated evidence, including her history of seizures and her description of her seizures. As the ALJ observed, that evidence is mixed. *See* Dkt. No. 17-1 at 27 (noting a moderately abnormal EEG in 2018, a clear MRI in February 2019, and a negative report of seizures in April 2019). Even despite this mixed evidence, the ALJ explicitly tailored his RFC and hypothetical to someone who suffers from seizures: "The individual must follow seizure precautions including, one, no exposure to hazards such as unprotected dangerous machinery, two, no working at unprotected heights, including no climbing ladders, scaffolds or ropes, and three, no driving." Dkt. No. 17-1 at 59–60 (hypothetical to VE at hearing); *id.* at 26 (Finding 4, same).

Per the plaintiff, that was inadequate. Rather, the ALJ should have asked detailed questions about whether a five- to ten-minute seizure occurring weekly or sometimes daily would have impeded the plaintiff's ability to perform the jobs identified by the VE. Dkt. No. 23 at 4. At the hearing, the VE testified in response to plaintiff's questions that an individual who cannot maintain uninterrupted focus for two hours would be incapable of

performing the jobs identified as options for the plaintiff. Dkt. No. 17-1 at 52. The plaintiff argues that, given her seizure disorders, she cannot focus for more than two hours and, thus, cannot perform any of the jobs the VE identified. Dkt. No. 23 at 5. As a result, the ALJ's reliance on the VE's testimony that there were jobs she could perform was erroneous, rendering his decision unsupportable. *Id*. at 5–6.

The problem for the plaintiff—as Judge Parker pointed out, *see* Dkt. No. 22 at 10—is that there is no evidence in the record that the plaintiff cannot maintain uninterrupted focus for two hours. *See Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989). That the plaintiff failed to offer evidence of her inability to focus for two uninterrupted hours as a result of those seizures is no fault of either the VE or the ALJ. *See Matterson v. Barnhart*, 309 F.3d 267, 273 (5th Cir. 2002) (affirming an ALJ's of hypotheticals that took account of only those claimed disabilities "supported by [the] evidence"); *see also Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988); *accord* Dkt. No. 22 at 8 (FCR) (citing *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)).

The RFC and resulting hypotheticals cannot be faulted for failing to incorporate nonexistent evidence. Indeed, mere conflict between the plaintiff's account and the medical records before the ALJ is insufficient to reverse the ALJ's conclusion unless no reasonable person could find support for the RFC based on the evidence. *Crista B. v. Berryhill*, No. 1:18-CV-042-BP, 2019 WL 2996553, at *4 (N.D. Tex. June 19, 2019) (Ray, M.J.). The ALJ's decision to craft a nuanced hypothetical designed to protect the plaintiff—despite evidence that was mixed as to whether the plaintiff even suffered from a seizure disorder—was reasonable and supported by substantial evidence. And the ALJ was entitled to rely on the VE's testimony when determining what jobs might suit the plaintiff. *Carey v. Apfel*, 230 F.3d

131, 146 (5th Cir. 2000). It was the plaintiff's burden to demonstrate that she could not succeed in any of those positions, something she failed to do. *Id.* at 135. Her final objection is overruled accordingly.

*     *     *

Having reviewed the objected-to portions of the FCR de novo, the Court finds that the ALJ's decision is supported by substantial evidence for all the reasons set forth above, as well as for the reasons explained by the Commissioner in her briefing and by the Magistrate Judge in his FCR. No objections were made beyond those now twice made and twice rejected. No plain error exists elsewhere in the FCR, so it is adopted in full. The Commissioner's decision to deny the plaintiff's application for SSI benefits is affirmed in all respects.

So ordered on March 9, 2022.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE